UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA FREEMAN,<br><br>    *Plaintiff*,<br><br>v.<br><br>SCOTT SANSOM, JOSEPH FICACELLI, and TOWN OF EAST HARTFORD,<br><br>    *Defendants*. | Civil No. 3:22-cv-00331-JBA<br><br>November 29, 2022 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS.**

Plaintiff, a former East Hartford police officer, brings a § 1983 claim against Chief of Police Scott Sansom, Police Lieutenant Joseph Ficacelli, and the Town of East Hartford. (Am. Compl. ("Compl.") [Doc. # 21]) Plaintiff alleges that her termination from the East Hartford Police Department ("EHPD") was the result of selective enforcement and disparate treatment on the basis of her gender in violation of the Equal Protection Clause (Count One), violated her Procedural and Substantive Due Process rights (Count Two), and represented a deprivation of her constitutional rights on the basis of the policy and practice of the Town (Count Three).

Defendants have moved to dismiss all claims under Rule 12(b)(6) [Doc. # 23]. For the reasons that follow, Defendants' motion is granted as to Count One's selective enforcement claim, Count Two, and Count Three, and denied as to Count One's disparate treatment claim and the claims against Lieutenant Ficacelli.

**I.    Background**

Plaintiff began working as a East Hartford police officer in 1994 and was terminated in April 2020. (Compl. ¶¶ 10, 18.) Her termination was based on her act of domestic violence

1

against a former partner, SD[1]. (Ex. F [Doc. # 23-7].) In March 2020, Plaintiff went to SD's house and banged on the door. (Ex. A [Doc. # 23-2] ¶ 19.) When SD didn't answer, Plaintiff broke his window. (*Id.* ¶ 20.) SD called the Connecticut State Police, who investigated and filed a domestic violence-related arrest warrant for Plaintiff, seeking to arrest her for disorderly conduct and criminal mischief. (*Id.* ¶ 24.) She was then arrested and a protective order was issued against her, prohibiting her from going to SD's home. (*Id.* at 10.)

EHPD learned of the investigation and warrant when the Deputy Chief was contacted by the Connecticut State Police to inform him that they were investigating the incident and that an arrest warrant had been submitted to the court. (*Id.* ¶ 2.) Plaintiff was subsequently arrested. (*Id.* ¶¶ 3-4.) The Deputy Chief then filed a complaint against Plaintiff detailing her conduct and arrest. (*Id.* at ¶ 1.) Plaintiff was notified of the investigation and placed on administrative leave. (Ex. C [Doc. # 23-4].) Lieutenant Ficacelli, a member of the Office of Professional Standards, investigated and determined that Plaintiff had violated Chapter IV § 4.3 of the EHPD rules and regulations. (Ex. A at 9.) Section 4.3 states that "[n]o Officer shall engage in any personal conduct or act which, if brought to the attention of the public, could result in justified unfavorable criticism of that Officer or the Department. No Officer shall be involved personally in disturbances or Police incidents to his/her discredit." (*Id.*)

After the investigation was completed, Plaintiff was given a *Loudermill* notice stating the reason for the investigation and the result of the investigation and notifying Plaintiff of a pre-disciplinary hearing. (Ex. D [Doc. # 23-5] at 1). A copy of the investigation report was also attached. (*Id.*) At the *Loudermill* hearing, Plaintiff acknowledged that she had received adequate prior written notice. (Ex. E [Doc. # 23-6].) Chief Sansom terminated Plaintiff that day for a violation of § 4.3. (Ex. F [Doc. # 23-7].) Plaintiff grieved the termination pursuant to the department's collective bargaining agreement ("CBA"). (Ex. B [Doc. # 23-3].) After a

---

[1] As a victim of domestic violence, SD's initials are used.

hearing, the State Board of Mediation and Arbitration ("SBMA") determined that there was just cause to terminate Plaintiff. (*Id.* at 14.)

In reaching this decision, the SBMA considered two other incidents in Plaintiff's disciplinary history[2]. (*Id.* at 13.) In 2007, Plaintiff was demoted from lieutenant to patrol officer and suspended for one week without pay as the result of an allegation that she had sexually harassed another officer, used her rank to coerce that officer into having sex with her while on duty, and assaulted an intimate partner. (*Id.* ¶ 2.) In 2015, Plaintiff went to the house of SD, then her ex-boyfriend, entered the house, and began to assault SD. (*Id.* ¶ 5.) She threw items at him and used a hammer to smash his kitchen counters and fridge. (*Id.*) She was arrested for disorderly conduct, assault, and criminal mischief, and a protective order was entered. (*Id.*)

## II.     Standard

Defendants have moved to dismiss the Amended Complaint under Rule 12(b)(6). "To survive a [12(b)(6) motion to dismiss for failure to state claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (internal quotation marks omitted). To be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must be interpreted liberally, all allegations must be accepted as true, and all inferences must be made in the plaintiff's favor. *Heller v. Consol. Rail Corp.*, 331 F. App'x. 766, 767 (2d Cir. 2009). But a complaint that only "offers labels and conclusions" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (internal quotation marks

---

[2] While the SBMA referenced numerous other allegations of violence and harassment, including towards intimate partners (Ex. B (Doc. # 23-2] ¶ 17), these did not result in formal reports and so were not considered by the SBMA when making its decision.

3

omitted). Likewise, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a complaint must plead factual allegations that "raise a right to relief above the speculative level" and must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]

## III. Discussion

### A. Documents Considered

As a threshold issue, the Court must consider whether to rely on the exhibits attached to Defendants' motion. Defendants attached the internal affairs investigation (Ex. A), the SBMA decision (Ex. B), the notice of administrative leave (Ex. C), the *Loudermill* notice (Ex. D), the *Loudermill* hearing record (Ex. E), the termination notice (Ex. F), and the CBA (Ex. G). Plaintiff argues that the Court may not consider these materials without converting Defendants' motion to a motion for summary judgment, particularly given that Plaintiff disputes the facts contained in these documents. (Pl.'s Opp'n [Doc. # 26] at 6-8.)

To decide motions to dismiss, courts can consider the complaint and "extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (internal quotation marks and brackets omitted). A document is integral to the complaint if it was "possessed by or known to the plaintiff," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and the "complaint relies heavily upon its terms and effect," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). For a due process claim, documents related to the process the plaintiff received are typically considered to be "integral." *See Johnson v. Berryhill*, 736 Fed.

---

[3] Plaintiff's opposition cites to pre-*Twombly* and *Iqbal* notice pleading cases that are no longer relevant. (Pl.'s Opp'n. [Doc. # 26] at 6.)

4

Appx. 27, 29 (2d Cir. 2018) (explaining that the ALJ's decision was integral to a complaint alleging a procedural due process violation in the denial of plaintiff's disability benefits); *Cloister E., Inc. v. New York State Liquor Auth.*, 563 F. Supp. 3d 90, 105 n.100 (S.D.N.Y. 2021) (finding that the notice of administrative proceeding and suspension notice were integral to a complaint alleging a procedural due process violation in the suspension of plaintiff's liquor license). Judicial notice is permitted where "a fact . . . is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court will consider Defendants' exhibits, but only to the extent that they demonstrate the process Plaintiff received, rather than for their contents. Proceeding sequentially, the internal affairs investigation is incorporated by reference. Plaintiff refers multiple times to the investigation, which she characterizes as evidence of the bias against her. (Compl. ¶ at 12-17.) The SBMA decision is integral to the complaint because it confirmed her termination. *See Kadri v. Groton Bd. of Educ.*, No. 3:13-CV-1165 JCH, 2014 WL 1612492, at *2 n.4 (D. Conn. Apr. 22, 2014) (explaining that the central issue of plaintiff's suit was termination, so the arbitrator's decision on termination was integral), and incorporated by reference to Chief Sansom's comments made at the SBMA hearing. (Compl. ¶ 27.) The notice of administrative leave, *Loudermill* notice, *Loudermill* hearing record, and termination notice are all integral to Plaintiff's due process claim and were all in her possession. Finally, the CBA is both incorporated by reference (Compl. ¶¶ 40, 54) and integral to the complaint's due process claim.

    **B.**    **Equal Protection Claim**

        **1.**    **Selective Enforcement**

Plaintiff alleges that department policies were selectively enforced against her on the basis of her gender. (Compl. ¶¶ 49-50.) As the Second Circuit recognized in *LeClair v.*

5

*Saunders*, to prove selective enforcement in violation of the Equal Protection Clause, a plaintiff must show that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." 627 F.2d 606, 609-10 (2d Cir. 1980).

Defendants argue as an initial matter that the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), bars Plaintiff's claim. (Defs.' Mem. [Doc. # 23-1] at 11-13.) However, as Plaintiff is not making a "class of one" claim, but instead a disparate treatment claim based on membership in a protected class (Pl.'s Opp'n at 11), *Engquist* does not bar her claim. In *Engquist*, the Supreme Court held that "class of one" claims cannot be brought against public employers. *Id.* at 594. But the opinion by its own terms does not bar selective enforcement claims that are based on membership in a protected class, instead limiting its reach to instances where "government employers are alleged to have made a[] . . . personnel decision in a seemingly arbitrary or irrational manner." *Id.* at 605. Furthermore, the rationale for the holding was the concern that if "plaintiffs need not claim discrimination on the basis of membership in some class or group, . . . any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim," explicitly distinguishing between the barred class of one claims and claims rooted in membership in a protected class *Id.* at 607. The Second Circuit has also recognized the limited reach of *Engquist*, explaining that it raises the question only of whether malice-based, not class-based, selective enforcement claims are viable after *Engquist. See Hu v. City of N.Y.*, 927 F.3d 81, 100 n.5 (2d Cir. 2019) (where plaintiff raised both race and malice-based selective enforcement

6

claims, noting an open question about the effect of *Engquist* only with regard to the malice claim).[4]

### a. Qualified Immunity

However, while *Engquist* does not bar Plaintiff's claim, the law regarding the application of *Engquist* to selective enforcement claims was not clearly established at the time of Plaintiff's termination, meaning that Defendants are entitled to qualified immunity on this claim. Although qualified immunity is an affirmative defense, it may "be asserted on

---

[4] The decisions Defendants cite to the contrary were decided before *Hu*, note the existence of an open question as to the reach of *Engquist* rather than stating a definitive approach, and in all but one instance do not address protected class-based discrimination. *See Emmerling v. Town of Richmond*, 434 Fed. Appx. 10 (2d Cir. 2011) (noting that the circuit had not yet decided whether *Engquist* foreclosed selective enforcement claims in the context of public employment where plaintiff argued that termination was motivated by personal vendetta); *Kamholtz v. Yates Cnty.*, 350 Fed. Appx. 589, 591 (2d Cir. 2009) (noting without deciding the impact of *Engquist* on public employees' selective enforcement claims where plaintiff argued that he was selectively prosecuted because of malice); *see also Preschools of Am. (USA), Inc. v. N.Y. City Dep't of Educ.*, No. 17-CV-5027 (RA), 2018 WL 4265886, at *7 n.9 (S.D.N.Y. Sept. 6, 2018) (noting open question about *Engquist* where plaintiff alleged selective enforcement on the basis of criminal history); *Wilson v. N.Y.*, No. 15 Civ. 23 (CBA) (VMS), 2017 WL 9674497, at *22 (E.D.N.Y. January 24, 2017) (noting disagreement about the scope of *Engquist* where plaintiff alleged selective enforcement on the basis of race; *Sharpe v. City of N.Y.*, No. 11 CIV. 5494 BMC, 2013 WL 2356063, at *4 n.6 (E.D.N.Y. May 29, 2013) (noting lack of clarity about *Engquist* where plaintiff asserted a selective enforcement claim on the basis of family relationships); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) (doubting that selective enforcement claims survived *Engquist* where plaintiff alleged selective enforcement in retaliation for public statements). Additionally, some of the cases cited by Defendants, like *Hu*, distinguish between malice and protected-class selective enforcement claims. *See Heusser v. Hale,* 777 F. Supp. 2d 366, 386-87 (D. Conn. 2011) (suggesting that "*Engquist* properly bars selective enforcement claims involving an employer's malicious, arbitrary, or irrational conduct" and stating that discrimination not "based on membership in a particular class . . . falls into the general category of selective treatment based on "malicious or bad faith intent to injure a person"); *Spanierman v. Hughes*, 576 F. Supp. 2d 292, 307 (D. Conn. 2008) (expressing doubt only as to whether a public employment selective prosecution claim based on malice could survive *Engquist*).

a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The "threshold inquiry" of a qualified immunity defense is "whether the plaintiff has alleged a violation of federally protected rights at all." *Naumovski*, 934 F.3d at 211 (internal citations and quotation marks omitted). If a constitutional violation has occurred, "A government actor performing a discretionary task is entitled to immunity . . . if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001) (internal quotation marks omitted). When considering qualified immunity at the motion to dismiss stage, a court "accept[s] as true all of the material allegations of the complaint, and draw[s] all reasonable inferences in favor of the plaintiff." *Velez*, 401 F.3d at 100. To be clearly established, a constitutional right must be "defined with specificity" and not defined "at a high level of generality." *City of Escondido v. Emmons,* 139 S. Ct. 500, 503 (2019). "A right is clearly established if the law (1) was defined with reasonable clarity, (2) has been affirmed by the Supreme Court or the Second Circuit, and (3) where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law." *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (internal brackets and quotation marks omitted).

While the Second Circuit has clarified *Engquist*'s limited reach in *Hu*, 927 F.3d at 100 n.5, it did not make an explicit statement such that "a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch.*, 187 F.3d 272, 278 (2d Cir. 1999).  Furthermore, as discussed above, the majority of cases discussing *Engquist* in the context of selective enforcement noted that the viability of selective enforcement claims post-*Engquist* was an open issue.  The Court therefore concludes that the selective enforcement portion of Count One must be dismissed on the basis of qualified immunity.

### i. Disparate Treatment

Plaintiff also claims that she was subjected to disparate treatment on the basis of her gender.[5] To analyze an Equal Protection disparate treatment claim, courts apply the *McDonnell-Douglas* burden-shifting test. *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019).

> Under the . . . test, a plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. Once a plaintiff has established a prima facie case, a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment. If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination.

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015) (internal quotation marks and citations omitted). A wide range of conduct can give rise to an inference of discriminatory intent, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge;" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312-13 (2d Cir. 2015) (internal citations and quotation marks omitted).

Defendants argue that Plaintiff has failed to plead a disparate impact claim on the basis of gender because she has failed to show facts supporting an inference of

---

[5] While Plaintiff's complaint alleges facts related to age-based discrimination (Compl. at ¶¶ 9, 16, 20), she does not mention age in her disparate impact claim (*id.* at ¶ 49), nor does she make any arguments in support of one in her opposition. The Court deems such a claim to be abandoned.

9

discriminatory intent. (Defs.' Mem. at 18.) Plaintiff argues that she has alleged discriminatory intent through more favorable treatment of comparable male employees. (Compl. ¶¶ 29, 33-34, 41, 49-50.) Plaintiff has identified seven comparators (Compl. ¶ 29.):

- Officer Cao, who had a history of domestic violence and multiple arrests prior to his hiring and was hired shortly after Plaintiff was dismissed.

- Officer Caraballo, who had an on-duty incident with a coworker in another town.

- Officer Jared Richards, who was arrested for domestic violence and received a one-day suspension.

- Officer Kwanza Clayton, who was arrested for violently assaulting his wife while intoxicated, receiving a one-day suspension, and received a four-day suspension after sexually harassing and assaulting a woman at a bar. (Ex. B ¶ 17.)

- Sgt. Ken Combs, among numerous other disciplinary events, was arrested for domestic violence, was arrested for assaulting his wife, and made false statements. He received numerous reprimands and brief suspensions, before being demoted. He grieved the demotion and resigned following a settlement agreement. (*Id.*)

- Sgt. Peter Vanek, who was arrested for domestic violence and received a written reprimand.

Some of the comparators are plausibly similarly situated. On the facts of the alleged misconduct, Clayton and Richardson committed acts of misconduct including domestic violence, and so are arguably similarly situated to Plaintiff. Combs, while similarly situated, was disciplined under a prior chief, so is not comparable. *See Radwan v. Univ. of Conn. Bd. of Trustees*, 465 F. Supp. 3d 75, 98-99 (D. Conn. 2020) (explaining that "courts in the Second Circuit . . . have held that where employees are disciplined by different supervisors, they are not similarly situated" and collecting cases to that effect).

### 2. Qualified Immunity

Defendants further argue that they are entitled to qualified immunity on the disparate impact claim. (Defs.' Mem. at 29.) They first argue that it is not clearly established that Plaintiff's comparators are similarly situated because much of the conduct involved occurred

prior to Chief Sansom's tenure, and the specifics of Plaintiff's domestic violence incidents are unique. (*Id.*) Plaintiff responds that it is well established that discrimination of the basis of sex is a constitutional violation. The Court is not persuaded by Defendants' arguments. The Second Circuit has long held that "the Equal Protection Clause protects [public] employees from sex-based workplace discrimination." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). As discussed above, viewing the allegations in Plaintiff's complaint in the light most favorable to her, she has named two comparators, which is sufficient to support an inference of discrimination. *See Demoret v. Zegarelli*, 451 F.3d 140, 152 (denying summary judgment on qualified immunity from employment discrimination claims because plaintiff had proffered evidence that similarly situated comparators were treated more favorably).

Defendants next argue that they are entitled to qualified immunity because their conduct was objectively reasonable as demonstrated by the SBMA's decision to uphold the termination and the seriousness of Plaintiff's misconduct. (Def.'s Mem. at 30.) However, because the Court declined to consider the content of the SBMA report, the crux of the reasonableness issue is not whether, viewed in isolation, Plaintiff's conduct merited termination. Instead, it is Plaintiff's assertions that Chief Sansom and Lt. Ficacelli pretextually fired her because she was a woman. "[A]ccepting as true all of the material allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiff," allegations that Defendants' investigation and termination of Plaintiff was motivated by her gender are plausible, and thus it was not objectively reasonable for Defendants to believe that their conduct did not violate the law. *Velez*, 401 F.3d at 100.

### C.   Procedural Due Process Claim

For a procedural due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Narumanchi v. Bd. of Trustees*, 850 F.2d 70, 72

11

(2d Cir. 1988) (internal citations omitted). Plaintiff has asserted both a property and a liberty interest in her employment, which she argues was improperly terminated. (Compl. ¶ 53; Pl.'s Opp'n at 16.) Defendants, however, argue that Plaintiff has received all required due process. (Defs.' Mem. at 19.)

In *Cleveland Board of Education v. Loudermill*, the Supreme Court held that in the employment context, the pre-termination due process requires the provision of a pre-termination notice, an explanation of the evidence, and the opportunity for a hearing. 470 U.S. 532, 546 (1985). When this pre-termination process is coupled with grievance proceedings ending in arbitration, due process is satisfied. *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 213 (2d Cir. 2003).

Here, Plaintiff has received all the process she was due. She was notified of the investigation into her conduct, provided with a *Loudermill* notice, and given a *Loudermill* hearing. After she was terminated, she pursued the CBA's grievance process and had an adversarial hearing before the SBMA. Without any factual allegations of impropriety in these steps, this is the process that was due, and Plaintiff also has not alleged any other facts beyond conclusory statements (Compl ¶ 13-21) that support a plausible inference of a violation of procedure or pretext. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, Plaintiff has not plausibly alleged that her procedural due process rights were violated.

### D. Substantive Due Process Claim

Plaintiff also alleges that her dismissal violated her substantive due process rights. (Compl. ¶ 56.) Defendants argue that this claim should be dismissed because it is duplicative of her equal protection and procedural due process claims. (Defs.' Mem. at 21-22.) "Where a particular Amendment provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted).

As Plaintiff's substantive due process claim is based on the same facts and allegations as her equal protection and procedural due process claims, she cannot rely on the broader protection of substantive due process. *See Saltarella v. Town of Enfield*, 427 F. Supp. 2d 62, 75 (D. Conn. 2006), *aff'd*, 227 Fed. App'x 67 (2d Cir. 2007) (explaining that plaintiff failed to state a substantive due process claim because his "substantive due process claim . . . raises no allegations beyond those already encompassed in his First Amendment, Equal Protection and Procedural Due Process claims . . . ."). The Court accordingly grants Defendants' motion to dismiss this claim.

### E. Official Capacity Claims Against Chief Sansom and Lt. Ficacelli

Defendants argue that the claims against Chief Sansom and Lt. Ficacelli in their official capacities are duplicative of the claims against the Town and should be dismissed. (Defs.' Mem. at 10.) *See Lozada v. Cnty. of Nassau,* No. 16-CV-6302 (JS)(AYS), 2021 1209740, at *10 (E.D.N.Y. Mar. 31, 2021) (explaining that when plaintiffs name both a municipality and an official in their official capacity, courts within the Second Circuit typically dismiss the official capacity claims as redundant). Plaintiff does not oppose the dismissal of these claims as identical to the claims against the Town. (Pl.'s Opp'n at 9.)

### F. Personal Capacity Claims Against Lt. Ficacelli

Defendants argue that the claims against Lt. Ficacelli in his personal capacity should be dismissed because he was not involved in the decision to terminate Plaintiff, nor did he have any say in the procedures used during her termination. (Defs.' Mem. at 23-24.) In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

Viewing the allegations in Plaintiff's complaint in the light most favorable to Plaintiff, Plaintiff has alleged that Lt. Ficacelli was involved in the investigation, discipline, and termination of Plaintiff and that his actions were motivated by Plaintiff's gender. (Compl. ¶¶ 9, 13-17, 19, 26, 34, 41-42.) While Defendants may ultimately be able to show Lt. Ficacelli's lack of personal involvement, at this early stage in the litigation, Plaintiff has plausibly plead his involvement.

### IV. Conclusion

For the reasons outlined above, the Court GRANTS Defendants' motion to dismiss Count One's selective enforcement claim, Count Two, and Count Three and DENIES Defendants' motion as to Count One's disparate treatment claim and Lieutenant Ficacelli's liability for Count One.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of November, 2022