**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LISA FREEMAN,<br>  *Plaintiff,*<br><br>  v.<br><br>SCOTT SANSOM, JOSEPH FICACELLI,<br>AND TOWN OF EAST HARTFORD,<br>  *Defendants.* | No. 3:22-cv-331 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Lisa Freeman is a former police officer suing the then-Chief of Police of the Town of East Hartford, Scott Sansom, who terminated her, the Police Lieutenant, Joseph Ficacelli, who investigated her misconduct, and the Town of East Hartford, in which she was employed. Ms. Freeman alleged that her termination was discriminatory because she was fired because she is a woman, and she argues that multiple male officers had similar misconduct to hers and yet were not terminated.

For the following reasons, Plaintiff's motion for summary judgment is **DENIED** and Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.

The claims against Joseph Ficacelli and the Town of East Hartford shall be dismissed, and judgment shall enter in favor of these Defendants. The claim against the remaining Defendant, Scott Sansom, shall proceed to trial.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

From January 1994 until her termination on April 27, 2020, Lisa Freeman ("Plaintiff" or "Ms. Freeman") served as a police officer for the East Hartford Police Department ("EHPD"). Pl. Statement of Material Facts, ECF No. 68-2, ("Pl. SMF") ¶¶ 1, 4; Def. Statement of Material Facts, ECF No. 71-2, ("Def. SMF") ¶¶ 1, 104.

In 2007, a fellow officer, over whom Ms. Freeman had supervisory authority, accused Ms. Freeman of sexual harassment and physical assault. As a result of this incident, Ms. Freeman received a two-rank demotion, a one-week suspension without pay, and reassignment to another unit. Pl. Statement of Facts in Opp. to Def. Mot. for Summ. J., ECF No. 77-1, ("Pl. Opp. SMF") ¶¶ 6, 10, 14.

In 2014, Ms. Freeman entered the home of a man with whom she had a relationship, after consuming five or more beers. Ms. Freeman became upset, threw his computer on the floor, and used a hammer to damage his granite countertops and beverage refrigerator. Pl. Opp. SMF ¶¶ 15, 16. As a result of this incident, Ms. Freeman was arrested and charged with criminal conduct. *Id.* ¶ 18.

On March 5, 2020, Ms. Freeman became involved in another incident with the same man, where, after consuming three beers, she went to the home of this "on and off" romantic partner, called him, then knocked on his back door, then knocked on his bedroom window and broke the glass. After breaking the glass, she left and went home. Pl. Ex. A, ECF No. 71-3, ("Freeman Dep.") 291:21–303:18.

EHPD Rules and Regulations, Rule 4.3 states:

> No Officer shall engage in any personal conduct or act which, if brought to the attention of the public, could result in justified unfavorable criticism of that Officer or the Department. No Officer shall be involved personally in disturbances or Police incidents to his/her discredit.

EHPD Rules and Regulations, Chapter IV, Rule 4.3; Pl. SMF ¶ 9. Lieutenant Ficacelli from the EHPD Office of Professional Standards investigated the March 5th incident, and following his investigation, he issued a report finding that Ms. Freeman violated Rule 4.3. Pl. Ex. 17, ECF No. 68-20. The then-East Hartford Chief of Police Sansom terminated her shortly after. Pl. SMF ¶¶ 37–38.

After she was terminated, the East Hartford Police Officers Association (the "Union") filed a grievance on Ms. Freeman's behalf and she had a hearing before the State Board of Mediation and Arbitration ("SBMA"), where the Union represented her. Freeman Dep. 345:16-25; Def. SMF ¶¶ 107, 108; Pl. Opp. SMF ¶¶ 107, 108. The SBMA held hearings on October 1, 2020, November 2, 2020, and December 11, 2020, and the parties "had full opportunity to present evidence and witnesses and an opportunity to cross examine . . . the parties filed post hearing briefs, and reply briefs." *See* Pl. Ex. EE, State of Conn. SBMA Arbitration Award in the Matter of Town of East Hartford and East Hartford Police Officers Association, ECF No. 71-33 (Jul. 28, 2023) ("Arbitration Award") at 2. On April 20, 2021, the arbitration panel found that there was just cause for her termination. Arbitration Award at 14; Def. SMF ¶ 110; Pl. Opp. SMF ¶ 110.

Almost one year later, Ms. Freeman brought this Complaint, alleging that other EHPD employees with similar disciplinary records were not terminated and were given less harsh penalties because they were men. *See* Compl., ECF No. 1.

During the time of Ms. Freeman's employment with the EHPD, there were other police officers, all male, who had incidents of misconduct, requiring discipline, which Ms. Freeman claims is comparable to her situation. These situations are as follows:

<u>Officer Santiago</u>

Officer Jose Santiago, a classmate of then-Chief Sansom at the Hartford Police Academy and later his colleague at the Hartford Police Department, Pl. SMF ¶ 43, allegedly became involved in multiple incidents, all of which occurred while he was intoxicated. *Id.* ¶¶ 48–66.  The first incident occurred while with the Hartford Police Department, before Chief Sansom and the EHPD hired him in June 2015. *Id.* ¶¶ 45–48. The Hartford Police Department internal affairs investigated him from March to July 2015, for an off duty incident in which he was reported to be intoxicated, "walking in the middle of [the] road[,]" had put his off duty pistol in the glove box of the friend who was driving him, and then argued with and slapped the driver. *Id.* ¶¶ 48–50; Pl. Ex. 4, ECF No. 68-7, at 33:14. The investigator from the Internal Affairs Division wrote the following in the Investigative Summary and Findings:

> Responding officers spoke with both Mr. Abdi and Mr. Rios regarding what had occurred. Both parties stated that they were friends of Detective Jose Santiago and had engaged in a verbal argument. All involved, including Detective Santiago stated they had been drinking earlier in the night and prior to the argument. No one made claims of any injuries and no signs of injuries were observed by on scene officers. Both Mr. Abdi and Mr. Rios stated to officers that they did not want any police action, were not looking to press charges of any kind and just wanted Detective Santiago to get a ride home . . . . Detective Jose Santiago did engage in a verbal argument with Mr. Abdi and Mr. Rios. Detective Santiago was most likely intoxicated and admitted to drinking prior to the incident. Detective Santiago was not in possession of his Department issued firearm and his personal firearm was unloaded and secured in the

> glove box of the vehicle. In conclusion the investigation determined
> that Detective Jose Santiago did not violate any criminal laws.

Pl. Ex. 18, ECF No. 68-21, at 7–8. The second incident, in 2016, occurred when his daughter

called the EHPD at 4:20 a.m. and reported that "he seemed upset" and was "yelling in the

kitchen . . . being loud and didn't know what was going on." *Id*. ¶ 57. Officer Santiago was

intoxicated, he had unholstered his firearm and put it on the kitchen counter, and another EHPD

took him away for the night. *Id*. ¶ 58. The EHPD Case/Incident Report stated, in part:

> Santiago was calm and appeared to be completely normal while
> speaking with me. Santiago state he did get a little upset when he
> returned home to find his house a mess and the kitchen to be very
> dirty. Santiago said he may have yelled about the conditions of the
> kitchen. But was never actually speaking to anyone directly since he
> was alone . . . I spoke with his daughter [who] stated she is the one
> who called the Police [because] she could hear her father yelling in
> the kitchen [and] he was being loud and didn't know what was going
> on . . . she was just worried about her dad because he seemed upset.
> No one reported any type of violence or actual argument between
> any of the family members. Santiago state he wished to leave for the
> night and asked if I could give him a ride. After we in the car to
> leave Santiago told me he had his off duty weapon on the kitchen
> table. Santiago stated he never leaves his weapons out and did not
> feel comfortable leaving it there. I went in and retrieved it for him.
> I dropped Santiago off at the Hampton Inn on Pitkin St. As I dropped
> Santiago off he stated he was tired and not feeling too well so he
> asked if I would hold on to his side arm for him. He stated he didn't
> want to worry about it in the hotel. I took Santiago's sidearm and
> secured it in my locker.

Pl. Ex. 21, ECF No. 68-24, at 1–2. The third incident again involved intoxication; this time his

wife called the police at 4:00 AM because of a "verbal argument over a bill and that his wife

called the police because she tried to end the argument and he wouldn't let it go." *Id*. ¶ 60. The

EHPD Case/Incident Report stated, in part:

> Jose stated he had been involved in a verbal argument with his wife
> [about] finances, over a dinner bill earlier that nigh. I then went into
> the home and spoke with [his wife. She] stated the argument was
> over a bill that Jose had to pay for her family earlier that night. [She]

> called the police because she tried to end the argument and Jose wouldn't let it go. [She] state she wasn't worried or concerned that the argument would turn physical. [She] state Jose would never hurt her or the kids. [She] state she didn't want Jose to get in trouble, that she just wanted him to leave the house for the night. I relayed [her] request to Jose and he agreed to leave for the night. Note at no time was there any violence or threats of violence to anyone in the home.

Pl. Ex. 22, ECF No. 68-25. The fourth incident, in March of 2022, occurred at a bar

where Officer Santiago pulled out his firearm and alarmed patrons and the manager. *Id*. ¶ 66.

The EHPD wrote the following in its investigative report:

> After having a conversation with another bar patron, Santiago approached the bar and placed his department issued firearm on the bar top leaving it unsecured and in range of civilian bar staff and patrons for approximately 18 seconds. Santiago then engaged in a dispute with another bar patron inside and outside of the bar which caused bar staff to call 911.

Pl. Ex. 23, ECF No. 68-26, at 5. The investigative report found that Officer Santiago had violated

EHPD Rules and Regulations, Rule 4.3. Id. at 6. EHPD did not terminate Officer Santiago after

this event, but in August, 2022, the Town of East Hartford, the Union, and Santiago entered into

a Last Chance Agreement, which referenced that incident at the bar in March, 2022, and stated,

"In the event Santiago again violated the Department's policy and regulations while consuming

or under the influence of alcohol during the term hereof, he shall be subject to immediate

termination of his employment, which he acknowledges is supported by just cause, without

recourse by him or the Union, to the grievance and arbitration provisions of the collective

bargaining agreement." Pl. Ex. 25, ECF No. 68-28, at 2.

Officer Clayton

Officer Kwanza Clayton, was allegedly involved in three separate disciplinary incidents.

Pl. SMF ¶¶ 68–70. The first incident was on August 31, 2012. *Id*. ¶ 68. "Officer Kwanza Clayton

was involved in a domestic violence incident with his wife at his home. He was intoxicated and violently assaulted her causing serious injury." *Id*. The EHPD wrote the following in its investigative report:

> On Friday, August 21, 2012, Officer Kwanza Clayton was at his residence . . . his wife, who is also a Telecommunications Operator at the East Hartford Police Department[,] reported that [she] asked Officer Kwanza Clayton to show her some defensive tactics. Officer Clayton then told her to block his hits which she could not. He struck in the facial area and boy multiple times. Officer Clayton picked [her] up and threw her to the ground which caused her foot to strike the counter. This caused a small laceration on her right foot. [She] called the East Windsor Police and reported this incident. She stated Officer Clayton had been drinking and has issues with alcohol. The East Windsor Police responded and arrested Officer Clayton based on the above information for Disorderly Conduct and Assault in the third degree.

Pl. Ex. 26, ECF No. 68-29, at 2–3. The investigative report found that Officer Clayton had violated EHPD Rules and Regulations, Rule 4.3. *Id*. at 3. The second incident was on April 30, 2014. Pl. SMF ¶ 69. "Officer Clayton was intoxicated at a hostage negotiation conference in Massachusetts. While at a social hour he was loud and slapped a female sheriffs' supervisor on the buttocks, which is a felony sexual assault according to Massachusetts criminal code." *Id*. The third incident was on September 23, 2021, when Officer Clayton tested positive for marijuana use on a drug test. *Id*. ¶ 70. After all three incidents, Officer Clayton was found to have violated EHPD Rules and Regulations, Rule 4.3 each time. *Id*. ¶¶ 68–70.  On November 12, 2021, Chief Sansom gave Officer Clayton a Notice of Disposition which included a Last Change Agreement

stating: "You are also warned that future sustained charged of misconduct may result in further discipline, up to and including termination." Pl. Ex. 33, ECF No. 68-33, at 2.

Officer Caraballo

In August 2018, Officer Nestor Caraballo, a former EHPD officer, the subject of a complaint, crossed the town line when he was supposed to be on patrol and then he was not truthful about why he was at another female officer's residence on multiple occasions. Pl. SMF ¶ 72; Pl. Ex. 36, ECF No. 68-40, at 2–3.

Officer Richards

In October 2017, Officer Jared Richards was arrested by the Windsor Police Department after it responded to the report of a verbal dispute between a male and a female. Pl. SMF ¶¶ 74–76; Pl. Ex. 37, ECF No. 68-41, at 1. An investigative report written on the incident stated that Officer Richards "was involved in an off-duty dispute with his former girlfriend, off-duty Windsor Officer Shayna Presley . . . he had a heated argument with Officer Presley outside as she walked to her vehicle. Officer Richards stated that he never made any contact with her and she never made any contact with him." Pl. Ex. 37, ECF No. 68-41, at 6. Chief Sansom gave Officer Richards Notice of Disposition which found that he violated EHPD Rules and Regulations, Rule 4.3 and it issued a one-day suspension and also stated: "You are also warned that future sustained charged of misconduct may result in further discipline, up to and including termination." Pl. Ex. 38, ECF No. 68-42, at 1.

<u>Officer Cortes</u>

In June 2019, "Officer Jose Cortes was reported to have lied about being involved in an auto accident while on duty and not reporting it." Pl. SMF ¶ 77.

<u>Officer Visconti</u>

"In November 2021 Visconti was caught sleeping by Ficacelli and given a 'Chief's Counseling' by Chief Sansom." *Id*. ¶ 79. In February 2022, Officer Visconti was in a bar in Florida wearing a shirt with "New Britain Police Academy" on the front and "Visconti" on the back of the shirt both in large lettering, as well as his EHPD Private Duty Approved Baseball style hat in the bar. Pl. Ex. 41, ECF No. 68-45, at 4. An investigative report written on the incident stated that "the shirt size exposed his EHPD badge and personal firearm such that bar patrons and staff noticed the items . . . the presence of the gun on Ofc. Visconti while drinking at the bar was of concern to bar staff, customers and in violation of Florida law. The 911 caller was also concerned with Ofc. Viscont's 'livid' reactions while playing pool." *Id.* at 5. Chief Sansom found that Officer Visconti had violated Rule 4.3 and gave him a 3-day suspension. Pl. SMF ¶¶ 81–82.

<u>Officer Cao</u>

On May 8, 2020, EHPD hired Jerry Cao as a police officer. *Id*. ¶ 83. In the EHPD Police Officer Applicant Background Investigation, conducted during January and February 2020, the report stated the following.

> Jerry Cao disclosed he was arrested in the City of Bristol in 2007 for a domestic violence case against his son's mother. He was issued a protection order in that case and rearrested for violation of the protection order. During the interview Jerry explained that he was in an argument with his child's mother and the neighbor called the police. He indicated they were both arrested and their son was not present. Jerry indicated he didn't hit [her] that he only pushed her,

> and that she hit him. Jerry mentioned they were both arrested less
> than a month later for violation of a protection order. No record
> found at Bristol PD.

Pl. Ex. 45, ECF No. 68-48, at 7.

### B. Procedural History

On March 1, 2022, Ms. Freeman filed her Complaint. *See* Compl., ECF No. 1 (Mar. 1,

2022).

On June 16, 2022, Ms. Freeman filed her Amended Complaint. *See* Amended Compl.,

ECF No. 21 (Jun. 16, 2022).

On July 22, 2022, Defendants filed their motion to dismiss. *See* Mot. to Dismiss, ECF

No. 23 (Jul. 22, 2022).

On August 26, 2022, Ms. Freeman filed her opposition to the motion to dismiss. *See*

Mem. in Opp. re Mot. to Dismiss, ECF No. 26 (Aug. 26, 2022).

On November 29, 2022, the Court (then U.S. District Judge Janet B. Arterton) issued an

order granting in part and denying in part the motion to dismiss. *See* Order, EF No. 34 (Nov. 29,

2022).

On May 31, 2023, Defendants filed their Answer. *See* Answer, ECF No. 60 (May 31,

2023).

On July 27, 2023, Ms. Freeman filed a motion for summary judgment. *See* Mot. for

Summ. J. by Lisa Freeman, ECF No. 68 (Jul. 27, 2023).

On July 28, 2023, Defendants filed a motion for summary judgment. *See* Mot. for Summ.

J. by Town of East Harford, Joseph Ficacelli, Scott Sansom, ECF No 71 (Jul. 28, 2023).

On August 25, 2023, Ms. Freeman filed her opposition to Defendants' motion for summary judgment. Mem. in Opp., ECF No. 77 (Aug. 25, 2023) ("Pl. Opp.").

On August 25, 2023, Defendants filed their opposition to Ms. Freeman's motion for summary judgment. Mem. in Opp., ECF No. 79 (Aug. 25, 2023) ("Def. Opp.").

On September 22, 2023, Ms. Freeman filed her reply to Defendants' opposition. *See* Reply to Def. Opp. to Pl. Mot. for Summ. J., ECF No. 86 (Sep. 22, 2023) ("Pl. Reply").

On September 22, 2023, Defendants filed their reply to Ms. Freeman's opposition. *See* Reply to Pl. Opp. to Def. Mot. for Summ. J., ECF No. 87 (Sep. 22, 2023) ("Def. Reply").

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary

judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Both Plaintiff and Defendants have moved for summary judgment. *See* Pl. Mem.; Def. Mem. The Court will address each in its own section, and factual inferences will be viewed in light most favorable to the nonmoving party for each respective motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017).

### A.  The Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment protects public employees from discrimination on the basis of a protected class, including sex. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015). Public employees may bring discrimination claims under 42 U.S.C. § 1983 against "responsible persons acting under color of state law." *Id.* at 87. Any state employee "acting in his official capacity" acts "under color of state law." *Id.* at 88 (internal quotation marks omitted). An individual may only be held liable under Section 1983 "if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks omitted).

Disparate treatment claims are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case of intentional discrimination by showing that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving

rise to an inference of discrimination." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (internal quotation marks omitted).

To make a showing of disparate treatment as part of a *prima facie* case, a plaintiff must show that she is "similarly situated in all material respects to the individuals with whom [she] seeks to compare [herself]." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). "What constitutes all material respects . . . varies," but a court must evaluate "(1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (internal quotation marks omitted). While the comparator's situation need not be functionally identical to that of the plaintiff, "[t]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010). Although the question of whether comparators are similarly situated is typically a question of fact for the jury, a court may "properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. Of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

In cases involving allegations of disparate treatment in workplace disciplinary proceedings, a comparator's underlying misconduct must be substantially similar to that of the plaintiff. *Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012) (finding in dicta that plaintiff making Title VII and Section 1983 equal protection claim needed to point to comparators of other races who were not suspended despite also being at "the center of a missing persons investigation" and exhibiting "behavior comparable to his" in that context); *Ruiz*, 609 F.3d at 495 (explaining that none of plaintiff's comparators were similarly situated partially

because none of them "were accused of sexual harassment, sexual abuse and rape" like plaintiff); *Rioux v. City of Atlanta, Ga*., 520 F.3d 1269, 1280 (11th Cir. 2008) ("A comparator is an employee similarly situated to the plaintiff in all relevant respects. The quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.") (internal quotation marks omitted).

Once the plaintiff makes out her prima facie case, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* "The employer's burden, however, is 'not a demanding one[.]' The employer 'need not prove the absence of discriminatory motive or that the [adverse employment decision] was motivated by a legitimate reason.' Instead, the employer need only articulate 'legitimate nondiscriminatory reasons [that are] clear and specific.'" *Martinez v. City of Stamford*, No. 3:20-CV-00174 (JCH), 2022 WL 824638, at *4 (D. Conn. Mar. 17, 2022), *aff'd*, No. 22-702-CV, 2023 WL 3162131 (2d Cir. May 1, 2023) (citations omitted).

The burden then shifts back to the plaintiff to demonstrate that "the employer's explanation is a pretext" for discrimination and that membership in the protected class was the real reason for the adverse action. *Kirkland v. Cablevision Sys*., 760 F.3d 223, 225 (2d Cir. 2014). This burden requires a plaintiff to "establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment. It is insufficient to establish simply that invidious discrimination was 'a motivating factor' of the offending conduct. As a result, a court considering a § 1983 claim at summary judgment must determine whether, construing the evidence in a light most favorable to the plaintiff, a reasonable jury could find that the adverse employment action would not have occurred 'but-for' sex

discrimination." *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) (citations omitted). The

Second Circuit clarified that the burden is higher for § 1983 claims than for Title VII claims.

> [A]t the third step of the *McDonnell Douglas* analysis, a plaintiff
> asserting a § 1983 claim bears a higher burden in establishing that
> the employer's alternative, nondiscriminatory reason for the adverse
> employment action is "pretextual." To establish "pretext" under
> Title VII, a plaintiff need only establish "that discrimination played
> a role in an adverse employment decision." In other words, a Title
> VII plaintiff need only prove that the employer's stated non-
> discriminatory reason was not the exclusive reason for the adverse
> employment action. By contrast, to establish "pretext" under § 1983,
> a plaintiff must establish that the employer's stated reason would
> not, alone, constitute a sufficient basis for pursuing an adverse
> action. In other words, a § 1983 plaintiff must establish that the
> employer's stated non-discriminatory reason is either false or
> inadequate to support the adverse employment action.

*Id.* at 214–15 (2d Cir. 2019).

### B.  Plaintiff's Motion for Summary Judgment

Plaintiff alleges that she has established, as a matter of law, that Defendants have violated

her Fourteenth Amendment rights with their disparate treatment towards her because of her sex.

*See* Pl. Mem. at 3. She claims that the record establishes that she was treated differently than

similarly situated male police officers. *See* Pl. Mem. at 17.

### 1.  The Equal Protection Claim against Chief Sansom

Ms. Freeman argues that she has established a *prima facie* discrimination case by

showing that (1) she is a woman and therefore a member of a protected class, (2) she was

qualified for her position, (3) she suffered the adverse employment action of termination, and (4)

the circumstances give rise to an inference of discrimination. Pl. Mem. at 4–5. She claims that

Defendants cannot consistently articulate a legitimate nondiscriminatory reason for termination,

and "so the analysis should end with judgment for the Plaintiff." *Id*. at 5 She argues her

16

misconduct was not reason enough to fire her because the misconduct of other male officers was "equal to or worse than Plaintiff's, and none of these officers were fired by Chief Sansom." *Id*. at 7. Ms. Freeman claims that EHPD Rule 4.3 was "deviously" used by Defendants as their cited reason for termination. *Id.* at 13.

Defendants argue in response that Ms. Freeman has not established an inference of discriminatory intent, so she has not proven a *prima facie* case because this fourth element is not met.[1] Def. Reply at 3. They allege that Officer Cao was not hired to replace Ms. Freeman, the comparators are not similarly situated, and they dispute the alleged statement by Deputy Chief Litwin calling Ms. Freeman "crazy" and any potential probative value it has. *Id*. at 3–6. Defendants also claim that they have stated a legitimate non-discriminatory reason for Ms. Freeman's termination. *Id*. at 6–7. Defendants argue that Ms. Freeman has failed to prove that her gender was a "but-for" cause of her termination. *Id*.

The Court disagrees.

Ms. Freeman offers many comparators and argues that their allegedly disparate treatment shows discrimination. Assuming all of Plaintiffs allegations are true—including that she was replaced by a man with a history of domestic violence and that the deputy chief called her "crazy"—and that the comparators are sufficiently similarly situated to give rise to an inference of discrimination, Plaintiff has presented a *prima facie* case. But Defendants have stated a legitimate non-discriminatory reason for Plaintiff's termination. The remaining issue is whether Defendants' stated reason is pretextual. *See Gilani v. Teneo, Inc.*, No. 20-CV-1785 (CS), 2021 WL 3501330, at *14 (S.D.N.Y. Aug. 4, 2021), *aff'd*, No. 22-169, 2022 WL 17817895 (2d Cir.

---

[1] Defendants concede that Plaintiff has met the first three elements. Def. Reply at 3.

Dec. 20, 2022) ("Because Defendants have met their burden to offer a legitimate, non-discriminatory reason for terminating Plaintiff, the burden shifts to Plaintiff to produce evidence that Defendants' reason is pretextual.") (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

　　To prove pretext, "the plaintiff must demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her." *Littlejohn*, 795 F.3d at 307–08. Ms. Freeman has alleged that the deputy chief referred to her as "crazy" and made a general comment "about women and women being crazy." Pl SMF ¶ 101. "Gender-based remarks directed at the plaintiff by a person with decision-making authority or a person with influence in the decision-making process can serve as evidence of discrimination sufficient to undermine the defendant's proffered reasons and establish pretext." *Alward v. Connecticut Dep't of Pub. Safety*, No. 3:08-CV-1952 RNC, 2011 WL 4572945, at *4 (D. Conn. Sept. 30, 2011) (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004) and *Crawford v. Dep't of Investigation*, 324 Fed. App'x 139, 142 (2d Cir. 2009)).

　　While Ms. Freeman offers evidence that she had good conduct at work, "courts have typically found evidence such as positive performance reviews, bonuses, and salary increases sufficient to establish pretext only when paired with other evidence demonstrating a discriminatory motive." *Forte v. Liquidnet Holdings, Inc.*, No. 14-CV-2185, 2015 WL 5820976, at *11 (S.D.N.Y. Sept. 30, 2015), *aff'd*, 675 F. App'x 21 (2d Cir. 2017) (summary order). Here, Ms. Freeman's performance at work did not result in her termination. Instead, her alleged misconduct outside of work prompted her termination. As to this conduct, Ms. Freeman

concedes that she went to her ex-boyfriend's property and broke his window (although she disputes that she knew she was trespassing, and she claims she broke the window by accident). Pl Opp. SMF ¶¶ 40–50. Ms. Freeman argues that she is similarly situated to male colleagues with similar conduct who were not terminated.

> An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct. [T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." In other words, the comparator must be similarly situated to the plaintiff "in all material respects."

*Ruiz*, 609 F.3d at 493–94 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) and *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)) (internal citations omitted).

Nevertheless, "although a comparator must be similarly situated to [plaintiff] in material respects, as discussed above, they need not be identically situated." *Radwan v. Manuel*, 55 F.4th 101, 138 (2d Cir. 2022) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11, (1976). In *Radwan*, the Second Circuit "reject[ed] any contention that, to survive summary judgment, [plaintiff] was required to demonstrate that a proposed comparator committed the exact same misconduct as she did or to present an identical factual analog to her situation." *Id*. at 138.

As a result, while Ms. Freeman's proffered comparators are not "identically situated" with her, she and her male counterparts were "subject to the same performance evaluation and discipline standards" and engaged, at least in some of the instances, in "comparable conduct," i.e., off-duty domestic disputes, the Court will leave the question of whether Ms. Freeman and any of her fellow officers are "similarly situated" for a jury to decide. *See Graham v. Long*

*Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury").

While the Defendants point to the recent summary judgment decision by my colleague, the Honorable Jeffrey Alker Meyer, *Castagna v. Sansom*, No. 3:21-CV-1663 (JAM), 2024 WL 197462 (D. Conn. Jan. 18, 2024), relying on similar comparators, that case involved a First Amendment retaliation claim, not a sex discrimination claim, involving officers of different genders, and discipline issues for similar incidents, off-duty domestic disputes. *See id.* at *13 (recognizing that the plaintiff "has offered insufficient evidence of causation linking his termination to motives of retaliation or discrimination to overcome the cumulative probative weight of the evidence of a legitimate reason for his discharge and of the final termination decision by the arbitration board") (citations and internal marks omitted). Likewise, the inquiry of the SBMA addressed the related, but different, inquiry as to whether the EHPD's termination of Ms. Freeman was justified, not whether her disciplinary record may have been different, but for her gender. *See* Arbitration Award, ECF No. 71-33, at 11 ("The town has the burden to establish by a preponderance of the evidence that it had just cause to support the termination of the grievant. It has met that burden of proof.").

Thus, on this record, Ms. Freeman has presented sufficient evidence to create a material factual issue as to whether Defendants' stated reason was pretextual. *See Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason[.]") (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981)). To be clear, as suggested above, the issue remaining for the jury is not simply whether Ms. Freeman should have been terminated, but

20

also whether her gender was a "but for" cause of the termination, specifically whether her disciplinary record in its entirety, a record which ultimately led to her termination, was sufficiently similar to disciplinary records of her male colleagues who were not terminated. *See Radwan*, 55 F.4th at 135 ("Viewing the facts in the light most favorable to Radwan, a reasonable jury could conclude that one of more of these student-athletes at UCONN was sufficiently similar in all material respects to Radwan to raise an inference, that but for her gender, she would not have received the more severe punishment of termination of her scholarship.").

As a result, these genuine issues of material fact, as to whether any of her alleged comparators are "similarly situated," and the subsequent credibility determinations to be made in reaching that conclusion are matters for the jury, not this Court. *See id.* at 140 ("[A]s with the comparator evidence, these fact-specific issues cannot be resolved on summary judgment based on the record in this case.").

Accordingly, Plaintiff's motion for summary judgment as to her claim against Chief Sansom will be denied.

### 2. The Equal Protection Claim against Lieutenant Ficacelli

Plaintiff alleges that "the bias of Ficacelli in the manner in which he investigated and the malicious negative inferences he installed in his reports" played an important part in the decision to terminate her. Pl. Mem. at 15.

Defendants argue in response that Plaintiffs have not presented evidence showing Lt. Ficacelli's personal involvement in any alleged discriminatory action. Def. Reply at 8.

The Court agrees.

Ficacelli was a Lieutenant in the EHPD assigned to the Office of Professional Standards and in that position, one of his responsibilities was to conduct Internal Affairs investigations that

were assigned to him. Lt. Ficacelli received assignments from Chief Sansom to investigate. Ficacelli Dep. 52:5–10. He testified that he "keep[s] an open mind" and is "just limited to gathering facts[.]" *Id.* 52:15–23.

During the same time that Lt. Ficacelli was investigating Ms. Freeman, he was also assigned to conduct Internal Affairs investigations into the conduct of Kwanza Clayton, Thomas Castagna, Robert Jones, and Ian Allison for their alleged misconduct. Pl Opp. SMF ¶ 146; Ficacelli Aff. ¶ 24. All were male and Lt. Ficacelli substantiated the allegations of misconduct against all of them, including for violations of Departmental Rule 4.3. *Id.* His investigations led to the termination of Castagna and Allison. Pl. Opp. SMF ¶ 147; Def. Mem. at 28. Chief Sansom also terminated Ryan Proulx, a man, for misconduct. Pl. Opp. SMF ¶ 150; Def. Mem. at 28

While Lt. Ficacelli's reports played a role in decisions regarding discipline, Plaintiff does not present sufficient evidence that he performed this role maliciously or discriminatorily. In fact, the evidence presented shows that she was the only female officer that was fired, while Lt. Ficacelli's reports gave information on the misconduct of at least five other men, which led some of them to also be terminated.

Accordingly, the Court will deny Plaintiff's motion for summary judgment as to her claim against Lt. Ficacelli.

## C. Defendants' Motion for Summary Judgment

In support of their motion for summary judgment, Defendants argue that (1) Plaintiff was terminated because of her misconduct and that no genuine issue of material fact exists regarding whether Plaintiff's sex was a "but-for" cause of her termination, Def. Mem. at 1, 16–17, (2) Lt. Ficacelli was not personally involved in the decision to terminate Ms. Freeman and so cannot be found liable under Section 1983, *id.* at 29–30, (3) Chief Sansom and Lt. Ficacelli are protected

22

by qualified immunity, *id.* at 30–36, and (4) Plaintiff has not established *Monell* liability against the Town of East Hartford. *Id.* at 36–39.

### 1.    The Application of the "But-For" Causation Standard

In affirming a District of Connecticut opinion in finding that the defendant has articulated legitimate nondiscriminatory reasons, the Second Circuit agreed that

> A plaintiff does not necessarily avoid summary judgment merely by establishing a *prima facie* case and presenting some evidence of pretext . . . . Instead, a court must determine, based on the entire record, whether the plaintiff could "satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

*Martinez v. City of Stamford*, No. 22-702-CV, 2023 WL 3162131, at *3 (2d Cir. May 1, 2023) (citing *Camblard v. Conn. Dep't of Children & Familie*s, No. 09-CV-0985, 2011 WL 3163581, at *5 (D. Conn. July 26, 2011) (internal citation omitted)).

Defendants argue that they have presented a legitimate reason for Ms. Freeman's termination and that she has failed to show "that the reason proffered was a 'cover up' for a 'discriminatory decision.'" Def. Mem. at 26 (citing *McDonnell Douglas*, 411 U.S. at 805). Defendants have provided evidence that the SBMA found that Defendants met their burden "to establish by a preponderance of the evidence that it had just cause to support the termination" and that of all the examples of male comparators, "none rise to the repetition and level of violence conduce by [Ms. Freeman]." Arbitration Award, ECF No. 71-33 at 11–13. While "an arbitration award does not have preclusive effect in federal court," *Miceli v. Mehr*, No. 3:17-CV-00029 (VAB), 2019 WL 5727387, at *9 (D. Conn. Nov. 5, 2019), *aff'd*, 830 F. App'x 63 (2d Cir. 2020) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974)), "a plaintiff who has failed in arbitration must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was

somehow compromised." *Morel v. American Bld. Maint. Co.*, 124 Fed. Appx. 671, 672 (2d Cir. 2005) *See also Castagna v. Sansom*, No. 3:21-CV-1663 (JAM), 2024 WL 197462, at *13 (D. Conn. Jan. 18, 2024) ("The State Board of Mediation and Arbitration conducted an extensive evidentiary hearing and issued a detailed ruling establishing that there was just cause under the collective bargaining agreement for East Hartford to terminate Castagna's employment. Although this ruling does not have formal preclusive or res judicata effect, the Second Circuit has ruled that such labor arbitration decisions may be highly significant evidence against an employee's later court claim for discrimination or retaliation.").

Plaintiff argues that Defendants cannot "articulate a '*legitimate* nondiscriminatory reason for discriminatory treatment,'" because "Chief Sansom has not been able to consistently articulate the basis for Plaintiff's termination." Pl. Mem. at 5. Plaintiff does not dispute that Defendants have offered a reason for her termination, but she disputes the legitimacy of the reason. To show it was illegitimate, Plaintiff points to how Defendant have discussed other incidents in her disciplinary history, claiming that these are inconsistent reasons. Plaintiff also offers evidence that colleagues thought highly of her, Pl. Mem at 5–6, in support of her argument that the stated reason for her termination was illegitimate.

The Court agrees, in part.

"Even if Plaintiff were able to meet his burden of establishing a *prima facie* case for wrongful termination, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination – namely, his documented behavioral problems that began shortly after his hiring and continued up until his termination." *Gilani v. Teneo, Inc.*, No. 20-CV-1785 (CS), 2021 WL 3501330, at *14–15 (S.D.N.Y. Aug. 4, 2021), *aff'd*, No. 22-169, 2022 WL 17817895 (2d Cir. Dec. 20, 2022) (rejecting Plaintiff's argument that Defendant's reasons were "shifting"

24

because Defendant had "identified multiple reasons for Plaintiff's termination, but not shifting ones" and "none of the reasons that [Defendant] ha[d] proffered for Plaintiffs' termination [we]re inconsistent with each other") (internal citations omitted).

But, as discussed above, Plaintiff has created a genuine factual dispute with respect to whether gender discrimination was a but-for cause of her termination. Based on the entire record, the Court has concluded that Ms. Freeman may be able "satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Martinez v. City of Stamford*, No. 22-702-CV, 2023 WL 3162131, at *3 (2d Cir. May 1, 2023) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

Accordingly, the Court will deny Defendants' motion for summary judgment as to Chief Sansom.

### 2.  Lieutenant Ficacelli's Personal Involvement

An individual may only be held liable for damages under § 1983 "if he was personally involved in the alleged deprivation." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).

Plaintiff does not address whether Lt. Ficacelli was personally involved in the decision to terminate her. Pl Mem. at 15–16; Pl. Reply at 2. She focuses her arguments whether Lt. Ficacelli properly conducted his investigation of her. *Id.*

Defendant argues that Plaintiff fails to come forward with any evidence showing Lt. Ficacelli's personal involvement. Def. Reply at 8.

The Court agrees.

The law requires Plaintiff to show "personal involvement" in the alleged discrimination, but no factual issue exists as to whether Lt. Ficacelli was personally involved in the decision to

terminate Ms. Freeman. His report did not provide a recommended action, Ficacelli Aff. ¶ 24, but only information about her conduct. Even assuming Plaintiff has demonstrated that Lt. Ficacelli investigated Ms. Freeman with a bias against her because she was a woman, she has not presented evidence to suggest that he was personally involved in the decision to terminate her. Pl. Reply at 2; Def. Reply at 8.

Accordingly, the Court will grant Defendants' motion for summary judgment as to the claim against Lt. Ficacelli.

### 3. Qualified Immunity

Qualified immunity is intended to shield public officials from liability from civil damages when their actions were objectively reasonable in light of clearly established legal rules. *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002). Courts engage in a two-pronged inquiry when deciding questions of qualified immunity at the summary judgment stage. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014).

"The first prong addresses the 'threshold inquiry' of whether the plaintiff has alleged a violation of federally protected rights." *Naumovski* 934 F.3d at 211 (quoting *Kelsey v. Cty. of Schoharie*, 567 F.3d 54, 61 (2d Cir. 2009) (internal quotation marks omitted)). The second prong asks whether that right was clearly established at the time of the violation. *Tolan*, 572 U.S. at 655–56.

More specifically, the Second Circuit has held that a state official sued in their individual capacity for damages arising out of their performance of discretionary functions is entitled to qualified immunity if they can demonstrate that: (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their action did not violate such law. *See Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998); *Gottlieb v. County*

26

*of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "There is no need for a case on point, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

Defendants argue that they are entitled to qualified immunity because neither Chief Sansom nor Lt. Ficacelli violated a clearly established right. Def. Mem. at 31. They also argue that Chief Sansom's and Lt. Ficacelli's conduct was objectively reasonable. *Id.* at 35. Particularly for Chief Sansom, terminating Ms. Freeman was reasonable because the SBMA did not overturn the termination. *Id.*

The Court disagrees, as to Chief Sansom.

"Individuals have a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004) (citing *Davis v. Passman*, 442 U.S. 228, 234–35 (1979) and *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980).

As to Chief Sansom, if, as alleged, he did discipline Ms. Freeman differently because she was a woman, then he violated a right that has been clearly established. "The Equal Protection Clause forbids sex discrimination no matter how it is labeled." *Back*, 365 F.3d at 118–19. "Accordingly, § 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *see also Raspardo v. Carlone*, 770 F.3d 97, 113–14 (2d Cir. 2014) ("state and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth

Amendment by discriminatory acts against those who work under them . . . We have held that the Equal Protection Clause protects such employees from sex-based workplace discrimination"). As a result, making disciplinary decisions based on sex could be found unreasonable, or in other words, it is not objectively reasonable to believe that treating Ms. Freeman more harshly because she was a woman does not violate the Equal Protection Clause. *See Demoret*, 451 F.3d at 148 ("A defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law.") (citing *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir.2001)); *see also Kercado-Clymer v. City of Amsterdam*, 370 F. App'x 238, 242 (2d Cir. 2010) ("To be denied summary judgment on qualified immunity, an official must violate clearly established law.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Accordingly Chief Sansom is not entitled to qualified immunity.

As to Lt. Ficacelli, the Court has found that Ms. Freeman does not have a viable equal protection claim against him and it need not reach the issue of whether qualified immunity applies to him.

### 4.    The *Monell* Claim against the Town of East Hartford

A municipality is only subject to liability under § 1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement or execution of a municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). Instead, "a plaintiff may be able to prove the existence

of a widespread practice that, although not authorized by written law or express municipal

policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of

law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988) (internal quotation marks and

citation omitted). Furthermore, "plaintiffs must show that the official policy, practice or custom

was the 'moving force [behind] the constitutional violation,' [ ] which is to say that it actually

caused the deprivation." *Hernandez v. Conn. Court Supp. Servs. Div.*, 726 F. Supp. 2d 153, 156–

57 (D. Conn. 2009) (internal citations omitted).

"[T]o prevail on a claim against a municipality under section 1983 based on acts of a

public official, a plaintiff is required to prove: (1) actions taken under color of law; (2)

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*,

542 F.3d 31, 36 (2d Cir. 2008).

> Courts have recognized four ways for plaintiffs to demonstrate a policy or custom: (1) a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers [ ]; (2) conduct ordered by a municipal official with policymaking authority [ ]; (3) actions taken pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels [ ]; or (4) a failure to train municipal employees that amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact[.]

*Walker v. City of N.Y.*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *2 (S.D.N.Y. Mar.

18, 2014) (internal quotation marks omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127 (1988); and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Defendants have moved for summary judgment for the claim against the Town of East

Hartford, arguing that Ms. Freeman failed to establish liability against the town under *Monell v.*

*Dept. of Soc. Servs. of the City of New York*, 409 U.S. 658 (1978). Def. Mem. at 36. They argue

that she has not identified a specific custom or policy sanctioning sex discrimination. *Id.* at 38.

Plaintiff has not addressed *Monell* liability against the Town.

The Town cannot be held liable under *Monell* because, Ms. Freeman has not presented

any facts or arguments in which she alleges that the Town had a policy or custom that caused

unconstitutional discrimination against her. "*Monell* does not provide a separate cause of action

for the failure by the government to train its employees; it extends liability to a municipal

organization where that organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d

207, 219 (2d Cir. 2006). Here, Ms. Freeman has alleged no independent constitutional violation.

Accordingly, Defendants' motion for summary judgment on this count as against the

Town of East Hartford will be granted.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED** and

Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**.

The claims against Joseph Ficacelli and the Town of East Hartford shall be dismissed,

and judgment shall enter in favor of these Defendants. The claim against the remaining

Defendant, Scott Sansom, shall proceed to trial.

The Clerk of Court is respectfully directed to enter judgement and dismiss Lt. Ficacelli and the Town of East Hartford from the case, and to amend the caption of this case accordingly.

SO ORDERED at New Haven, Connecticut, this 16th day of February, 2024.

<u>/s/ Victor A. Bolden</u>

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE